(C. D. 1809)

HAYES G. SHIMP, INC.
AIR EXPRESS INT'L AGENCY, INC. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 27, 1956)

*Sharretts, Paley & Carter* (*Howard Clare Carter* and *Richard F. Weeks* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge:  The protest in this case is directed against the classification by the collector of customs in New York of certain instruments invoiced as "Electro-Haemoscopes with their complete accessories" under paragraph 228 (a) of the Tariff Act of 1930, as amended by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, supplemented by T. D. 52820, at the rate of 50 per centum ad valorem as "Colorimeters & Parts."  The plaintiffs claim the merchandise should be classified under paragraph 360 of the Tariff Act of 1930, as amended, *supra*, at the rate of 30 per centum ad valorem as a laboratory instrument.  Plaintiffs alternatively claim that the merchandise should be held dutiable at 17½ per centum ad valorem under the pertinent paragraph of the Tariff Act of 1930, as amended, as an electrical therapeutic diagnostic apparatus, but this alternative claim was not pressed at the trial of the case, nor argued in plaintiffs' brief, and no further reference will be made to it in this opinion.

Paragraph 228 (a) of the Tariff Act of 1930, as amended, *supra*, provides as follows:

Spectographs, spectrometers, spectroscopes, refractometers, saccharimeters, colorimeters, cathetometers, interferometers, haemacytometers, polarimeters, polariscopes, photometers, ophthalmoscopes, slit lamps, corneal microscopes, optical measuring or optical testing instruments, testing or recording instruments for ophthalmological purposes, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished, or unfinished, 50 per centum ad valorem.

While the imported instruments were classified as colorimeters, yet the Government contends that, if they are not properly classifiable under that heading, they are haemacytometers.  The questions presented for determination, therefore, are whether or not the instruments under consideration are properly dutiable under paragraph 228 (a) of the Tariff Act of 1930, as amended, *supra*, as classified by the collector, namely, as colorimeters, and, if not, whether they may be held by the court to be dutiable under the same paragraph as haemacytometers, or whether the importation properly comes under the pro-

visions of paragraph 360 of the tariff act, as amended, *supra*, as laboratory instruments, as contended by the importer.

As pointed out in plaintiffs' brief, and as borne out by the testimony, "The function of the haemoscope is to furnish a recording indicating the red blood cell value" or count of a blood specimen.

Hayes G. Shimp, Jr., a witness called by the plaintiffs, testified concerning the use of the imported instrument, as follows:

CHIEF JUDGE OLIVER: Did he show you the instrument?

WITNESS: Yes.

CHIEF JUDGE OLIVER: Did he demonstrate its use?

WITNESS: The inventor demonstrated its use.

CHIEF JUDGE OLIVER: Dr. Toennies was not the inventor?

WITNESS: No.

CHIEF JUDGE OLIVER: Did he introduce you to the inventor?

WITNESS: Yes.

CHIEF JUDGE OLIVER: And did the inventor demonstrate the equipment?

WITNESS: Yes.

CHIEF JUDGE OLIVER: What did the inventor in your presence and Dr. Toennies presence show you in the demonstration of the use of the machine?

WITNESS: First he turned on the power and he introduced at that time a specimen of blood into it and showed me how he got a recording indicating the red blood cell value of this specimen. (R. 17).

Arthur M. Siegelman, an expert witness called by the plaintiffs, testified concerning the imported machine, plaintiffs' exhibit 1, illustrated by plaintiffs' illustrative exhibit 2, as follows:

CHIEF JUDGE OLIVER: Excuse me, what does the operator get from reading the scale on the machine—I understand how they bring the light cells in balance and interpret the result on the dial, but what does that result mean? Why have they gone to all that——

WITNESS: I see what you mean, I misunderstood you.

CHIEF JUDGE OLIVER: What have they sought and what have they got?

WITNESS: They have got a red blood cell count.

CHIEF JUDGE OLIVER: You said that the machine doesn't count anything.

WITNESS: The instrument doesn't count anything, but we have taken the response of the instrument and translated what would be an accurate blood count if you would—there is a straight angular degree scale; under this is the red blood cell scale——

CHIEF JUDGE OLIVER: The dial on the right hand side, does that bring about the red blood cell count more accurately or quicker or what is the purpose of the machine?

WITNESS: It takes a red blood count I qualify that only because operationally there is no count, but it is translated into a count.

CHIEF JUDGE OLIVER: The ultimate result is a count?

WITNESS: Yes, translated into terms the user can understand and it does this with much greater speed than the chamber method, that is the haemocytometer method. * * * (R. 48–49.)

It appears certain, therefore, that, when we get to the heart of the matter, the real purpose of the haemoscope is to obtain an accurate red cell blood count, which is the same result as that produced from the use of a haemacytometer which is specifically mentioned in paragraph 228 (a) of the tariff act.

Stedman's Medical Dictionary, Sixteenth Revised Edition, published in 1946, gives the following definitions of some of the terms referred to in the testimony:

**colorimeter** [L. *color*, color,+ G. *metron*, measure.]   Chromatometer.

**chromatometer** [G. *chrōma*, color,+ *metron*, measure.]   A scale of various shades of color, used for determining the color or depth of color of a liquid or other substance.

**hemacytometer** [G. *haima*, blood,+ *kytos*, cell,+ *metron*, measure.]   An appliance for counting the blood-cells; hemocytometer, hematometer, hemometer.

**hemocytometer,** haemocytometer.   An apparatus for estimating the number of corpuscles in a given quantity (cubic millimeter) of blood.

The same dictionary defines "blood count" as "a count of the absolute and relative numbers of red and white cells in a given quantity of blood."

It is, of course, well established in customs decisions that tariff laws are written in language which is to be interpreted according to its common, ordinary sense, and not in the technical, scientific sense. *American Felsol Co. et al.* v. *United States*, 25 C. C. P. A. (Customs) 367, T. D. 49454.

In the quest for the true meaning of the tariff provisions now before us, much of the testimony of the witness Siegelman is not helpful. It falls under the heading of technical and scientific explanations, rather than statements in common ordinary language, as the following excerpts from the record well illustrate:

CHIEF JUDGE OLIVER: How does the so-called colorimeter or photometer compare in the end use and end result with the haemoscope, how do they compare or how do they differ?

WITNESS: In a colorimeter we would take a cuvette of an unknown solution let's say red blood cells——

CHIEF JUDGE OLIVER:   You mean a sample when you say cuvette?

WITNESS: Yes, it is a glass container, it is referred to because it has an affect [*sic*] on the light beams which has already been considered and reduced to zero. We take this cuvette and place it into the path of the light of the colorimeter, place it between the light source and the photocell or in some instruments between the light source and the eye; when the light beam strikes the material in the cuvette some of that light is absorbed by the solution; part of the light is permitted to pass through and fall on the face of the photocell; this is known as transmitted light and this is light that a colorimeter measures; in the case of the haemoscope however, all the transmitted light is condensed and caused to pass through the aperture in the photocell.   I have the angular photocell here; when there is no material, no cuvette in the path of the light, all the transmitted light is passing through the hole in the photocell.

When we take the solution, the red blood cells in this case, and put them in the path of the light, the particles scatter; some of the light, a very small percentage, perhaps one percent or two percent of the light at the most, is light that the haemoscope is measuring.

Whereas the colorimeter responds to transmitted light, the haemoscope responds only to scattered light; as a matter of fact, we have gone to a great deal of painstaking trouble to—— (R. 62–63).

Again, witness Siegelman, when asked concerning certain definitions on cross-examination, testified as follows:

X Q. I read you a definition from Webster's Dictionary, 1948 Edition, page 1163, "Haemocytometer—an apparatus for determining the number of corpuscles in a given quantity of blood", do you agree with that definition?—A. Not without qualification.

X Q. What are those qualifications?

    \*        \*        \*        \*        \*        \*        \*

A. It is a dictionary definition that is for the layman and much too general; to a technician it is meaningless; he would have to be more specific than that; a medical dictionary might give you a better one.

X Q. Is your opinion predicated upon the fact that as a technician or scientist you can't reconcile yourself with that definition, it is too broad?—A. I object to it as a logician, may I put it that way; while it is a correct one, it is over-generalization, it would appear from seeing that that any means of determining red blood cells is a haemocytometer.

X Q. Are you familiar with Stedman's Medical Dictionary?—A. To some extent, yes.

X Q. I refer you to page 494, 1946 Edition, definition for Haemocytometer, "an appliance for counting the blood cells, hematometer, hemometer." Do you agree with that definition?—A. Absolutely not. It is totally incorrect.

X Q. In what way do you differ with that definition?—A. The hemometer is what we have in our exhibit there and it is used for hemoglobin.

X Q. These words follow the definition, I may be in error in giving you this word, they may be other words with the prefix "haemo", but do you agree with the medical dictionary definition, haemocytometer, "an appliance for counting blood cells"?—A. With the same qualification.

X Q. As you stated before?—A. Yes, it is not universal.

X Q. You do not agree with Stedman's Medical Dictionary and you do not agree with Webster's definition in total?—A. Generally yes, but universally, no.

X Q. But a haemocytometer is used to determine the red blood count?—A. Yes.

X Q. And does a haemoscope determine the red blood count?—A. No, I think I explained that, red blood count is a metaphysical term, it is not a "true" term; nobody knows what the blood count is and nobody ever will. We use red blood count because the users in the field have thought in terms of red blood count for many years. So we take our photoelectric result and we have calibrated it so we may translate our count into a red blood count; the haemoscope does not count cells, it does not say, one, two, three, four, five—in a haemocy-

tometer the technician looks into the microscope and actually counts the cells, she doesn't care whether they are big, large or small, she is only concerned with the number of red blood corpuscles.

CHIEF JUDGE OLIVER: The result of the technician doing what you say now is directed toward the technician determining the red blood corpuscle count in a specimen, isn't that correct?

WITNESS. Yes.

CHIEF JUDGE OLIVER: The haemoscope seeks the same result which is the number of red blood corpuscles?

WITNESS: The term red blood count is not an absolute; it is a hypothetical abstract; it is an assumption that it is the real count.

CHIEF JUDGE OLIVER: But in the common meaning, frequently laboratories or other place to [sic] make tests to determine the blood count of the patient, do they not?

WITNESS: Yes, to get a result which is spoken of as a red blood count.

X Q. In Defendant's Exhibit "A" you say it is the reliable means for determination of the red blood cell count, is that right?—A. Yes.

X Q. And in Webster's definition where it says "an apparatus for determining the number of corpuscles in a given quantity of blood" isn't that the same thing? That's from the 1948 edition.—A. Might I suggest that this is 1955.

X Q. Might I suggest that I would like an answer, isn't it the same thing?— A. No, sir. It is not. (R. 104–107.)

It will be thus seen that the witness did not attempt to define any of the terms in common or ordinary language but, when pressed for final answers, in substance, admitted that the haemacytometer and the haemoscope really serve the same purpose, i. e., to obtain a blood count.

The record, in our opinion, establishes that the imported haemoscopes are not colorimeters, as classified. On the other hand, we are convinced that from the statements of counsel and the evidence in the record, and also from the authorities referred to, for all practical purposes, a haemoscope and a haemacytometer serve the same purpose.

The plaintiffs urge that because the imported machines are portable and that they are generally used in hospitals where blood counts are taken, they are different from haemacytometers. This, however, does not appear a sound and meritorious distinction. There is nothing to indicate that haemacytometers are not used in hospitals or that they are not portable. It is a matter of common knowledge that they are used in laboratories. We are impressed with the fact that the plaintiffs, when required to use common, ordinary terms in describing the imported instruments, as compared with haemacytometers, really could point out no actual difference in the practical use and results, as shown in the following testimony:

X Q. But a haemocytometer is used to determine the red blood count?—A. Yes. (R. 105–106.)

Earlier the witness had recognized a pamphlet (defendant's exhibit A), issued by his company, showing a true representation of one of the imported instruments and admitted that he had written the following language upon the pamphlet, describing the imported haemoscope: "the only accurate and reliable means for determination of the red blood cell count." (R. 103.)

The plaintiffs have urged that, since the collector classified the imported instruments as colorimeters, there is no presumption of correctness accompanying the Government's claim that the instruments may be classified as haemacytometers. This appears to be admitted by the defendant. However, there does not appear to be any failure of proof, as urged by the plaintiffs, in support of the classification of the imported instruments as haemacytometers, because, as heretofore pointed out, the record is replete with evidence showing the similarity in use and purpose of the imported instruments and haemacytometers.

We do not think the importation properly classifiable under paragraph 360, as amended, *supra*. Plaintiffs' witness Shimp testified that his firm, Hayes G. Shimp, Inc., originated the word "haemoscope" by combining two words, "haemo and scope, one meaning blood and the other to view or see" (R.31). Yet, the witness admitted that the word "haemoscope" appeared in Funk & Wagnalls Dictionary before the date his company supposedly coined it (R. 32). The record, therefore, does not justify the conclusion that the term "haemoscope" was invented just to designate plaintiffs' imported machines, but rather bears out the finding that the term "haemoscope" may be applied to any instrument designed to examine blood specimens for the purpose of making a blood count. There is, therefore, no reason for resorting to the general classification of laboratory instruments under paragraph 360 of the Tariff Act of 1930, as amended, *supra*, since haemacytometer, a term meaning substantially the same as the word "haemoscope," appears *eo nomine* in paragraph 228 (a) of the tariff act. In the light of this statement of facts, we find no reason for discussing *Arthur H. Thomas Co.* v. *United States*, 72 Treas. Dec. 203, T. D. 49102; and *United States* v. *R. J. Saunders & Co., Inc.*, 42 C. C. P. A. (Customs) 128, C. A. D. 584, cited in plaintiffs' brief.

On the basis of the record here presented, we are of opinion that the merchandise at bar is classifiable under paragraph 228 (a) of the Tariff Act of 1930, as amended by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, supplemented by T. D. 52820, under the *eo nomine* provision for "haemacytometers" at the rate of 50 per centum ad valorem. Accordingly, for the reasons stated aforesaid, the protest in this case is overruled, without affirming the action of the collector. Judgment will be rendered accordingly.